[Civ. No. 3991. Third Appellate District.—April 26, 1930.]

ADA CARLINE DOW et al., Appellants, v. SOUTHERN PACIFIC COMPANY (a Corporation) et al., Respondents.

## CORRECTION

In Volume 105 California Appellate Reports, page 379, in Dow v. Southern Pacific Company, "Affirmed" should read "Reversed."

PLEASE MAKE CORRECTION IN YOUR VOLUME

George F. Jones and J. D. Peters for Respondents.

PLUMMER, J.—The defendants had judgment in an action prosecuted by the plaintiffs to obtain damages suffered by them for and on account of the death of Percy Everett Dow, on the twenty-fourth day of December, 1926, alleged to have been caused by the carelessness and negligence of the defendants. From this judgment the plaintiffs appeal.

The complaint in this action, after alleging a number of preliminary matters unnecessary to be set forth herein, contains two paragraphs specially involved upon this appeal. These paragraphs are as follows:

"V.

"That on the 24th day of December, 1926, said Percy Everett Dow was traveling as a passenger in an automobile and along the public highway on First Street, in Chico, Butte County, California, from an easterly to a westerly direction, near and at a point where said First Street crosses the right of way of said Southern Pacific Company. That as said Percy Everett Dow had reached said crossing and was using and exercising due care on his own behalf for his own safety, the said defendants carelessly and negligently caused one of its regular passenger-carrying trains, with locomotive attached, owned and operated by the defendant Southern Pacific Company, and then and there in charge of and being driven by the defendant William Edgar Field, then and there regularly employed engineer of said defendant Company, and Joseph Wilson Laurant, then and there the regularly employed fireman of said defendant Company, at the time on said Railroad, to approach said crossing, and then and there pass over the track of said Railroad at a very high and dangerous rate of speed, and said defendants negligently and carelessly omitted the duty incumbent upon them and which they owed the said Percy Everett Dow, while approaching said crossing, to give any signal by ringing any bell or sounding any steam whistle, as provided by law, and that by reason of said negligence and carelessness, the said Percy Everett Dow was unaware of the approach of the said railroad train.

"VI.

"That said steam train complained of herein, was traveling in a southerly direction, and was approaching said crossing, and was being operated and driven in a negligent and careless manner, at a high, rapid and dangerous rate of speed, through Chico, and over said highway crossing at said point."

This action is a companion case to that of *Ethel G. Johnson et al., Plaintiffs and Respondents*, v. *Southern Pacific Co., a Corporation, et al., Defendants and Appellants*, Sacramento No. 4396, decided by this court, and opinion filed therein on the twenty-second day of April, 1930 (*ante*, p. 340 [288 Pac. 81]). Both cases are based upon practically the same state of facts, save and except as otherwise stated herein, and the opinion in the Johnson case is hereby

referred to as containing a statement of the facts shown by the testimony in this case, as fully and completely as though recopied herein.

In addition to what we have recited of the testimony in the Johnson case, the transcript in this case shows that the deceased Percy Everett Dow was riding as a guest in an automobile owned and operated by Jack Salyer, and came to his death by a collision which occurred about 12:30 A. M. on the morning of December 24, 1926, between the automobile driven by Jack Salyer and the locomotive drawing train No. 13, owned and operated by the defendant corporation. The transcript further shows that First Street in the city of Chico where the collision occurred is one of the main arteries or highways; that said street is a well-paved and much traveled street, connecting, as it does, the east and west sides of the Sacramento Valley leading to the city of Chico, the population of the city of Chico being estimated at about 14,000. The record shows, without much contradiction, that First Street crossing in the city of Chico comes within the class of what is generally termed a "blind crossing," all four corners of the crossing being well built up and the approaach of a train from the north being obscured from the view of one traveling easterly on First Street. The record in this case likewise establishes that after the locomotive struck the automobile being driven by Jack Salyer, it carried the automobile on the pilot a distance of about 1,000 feet. The record further shows that Percy Everett Dow occupied the rear seat of the automobile driven by Jack Salyer. The collision resulted in the immediate death of Percy Everett Dow. Ada Carline Dow is the widow of the deceased and Bernice Dow is a minor daughter of the deceased, and of the plaintiff Ada Carline Dow.

At the request of the defendants the court gave the following instruction, designated as "Instruction No. 7," which is assigned as error, to wit: "You are instructed that a Railroad Company has the right to operate its trains at any rate of speed, except where such speed is limited by law, and you are further instructed that there is no law in the State of California, or of the County of Butte, or of the City of Chico, regulating the speed of trains over the First Street crossing in the City of Chico." In addi-

tion to the testimony set out in the opinion in the Johnson case, relative to the speed at which the train was traveling, we herewith set forth the testimony of the engineer operating the locomotive of train No. 13 at the time of the collision which shows a somewhat different state of facts, as to the question of speed, shown by the testimony in the Johnson case. The testimony of the engineer is as follows: "Q. You mean the speed restriction of the Company? A. Yes, sir. Q. What was it? A. 50 miles an hour. Q. 50 miles an hour? A. Yes, sir. Q. In other words, the Company restricts you to 50 miles an hour, and you believe, as an engineer, if you were late, you had a right to make up that time by going across crossings at 50 miles an hour? A. I don't believe it but I know it. Q. Now, is it not a fact that the curve you have reference to is where the track straightens out just a little above the bridge? A. I don't know how far it is; I don't remember how far it is. Q. You don't know how far it is? A. It is as I said here. Q. Pardon me, Mr. Field. Did you begin first to reduce your speed when you got around that curve? A. Yes, sir. Q. And you did that to reduce your speed going into the station, didn't you? A. Yes, sir. Q. Why didn't you reduce your speed to go over that crossing? A. Because there is neither rule nor law that requires it to be done. Q. So you thought, did you, Mr. Field, that you had a perfect right to drive over that crossing at First Street, at that hour of the night or day, at any rate of speed up to 50 miles an hour? A. So far as the rules were concerned."

In so far as what the engineer thought, the testimony might have been objected to as immaterial, but it is produced here as bearing upon the question of speed. The testimony shows, without any contradiction, that prior to the reduction of speed, the train had been running at from forty-five to forty-eight miles per hour. In the Johnson case the testimony indicated that the first reduction of speed was had further from the crossing, just how far is not definitely stated. Here the testimony shows that the reduction of speed was had just as the engine rounded the curve, and came upon the straight track leading to the crossing. Other testimony in the case shows that the distance of the curve from the crossing, or rather, the distance from the crossing to where the track curved gently to the

westward, is 600 feet. From this fact the jury may well have concluded that the rate of speed when train No. 13 reached First Street crossing was much in excess of thirty miles per hour, as testified to by the engineer and fireman.

 Upon this appeal it is contended by respondents that the rate of speed at which the train No. 13 was being operated was not really put in issue, and, therefore, if it be conceded that the instruction which we have set forth is erroneous, no prejudice has resulted. The contention of the respondents in this particular, however, does not appear to be well taken. Paragraph V, while not a model pleading, does, when stripped of unnecessary verbiage, contain the following allegation relative to speed: "The defendants carelessly and negligently caused one of the regular passenger trains, with locomotive attached, owned and operated by defendants, Southern Pacific Company, to approach said crossing, and then and there pass over the track of said railroad at a very high and dangerous rate of speed." The paragraph then contains a further allegation as to the negligence of the defendants in not giving any signals.

Paragraph VI contains an allegation that the train was being operated and driven in a negligent and careless manner, at a high, rapid and dangerous rate of speed, through the city of Chico and over said highway crossing. The answer of the defendants does not really deny the high rate of speed. The clerk's transcript shows the denial to be in the following language: "Deny that defendants carelessly and negligently caused the regular passenger-carrying train with locomotive attached . . . to pass over the track of said railroad at a *very* high or dangerous rate of speed." An examination of the transcript, however, shows that the cause was tried upon the theory that the complaint sufficiently alleged that the train was being operated over First Street crossing at a negligent rate of speed, and that the defendants had sufficiently denied the same, and, therefore, the question of speed was an issue of fact in the case. That instruction number VII eliminated this issue from consideration by the jury must be conceded. By the instruction the court told the jury that a railroad company possesses the right to operate its trains at any rate of speed, except where such speed is limited by law, and then informed the jury that there was no law of the state of California, or of the county

of Butte, or of the city of Chico regulating the same. From this instruction the jury could not very well conclude otherwise than that at the time and place in question the defendants had the right to operate train number 13 at any rate of speed it saw fit. This instruction is not a correct statement of the law. The fact that the legislature has not, nor has the county of Butte, nor the city of Chico, attempted to regulate the rate of speed over the crossing in question, does not open the gates to any rate of speed which either the company or the defendants' agents, might see fit. Being an obstructed crossing, or a crossing in which the approach of the train is more or less obstructed, the record showing sufficient testimony from which the jury might very well conclude that the approach of a train from the north could not be perceived or seen by anyone traveling in a westerly direction until a point was reached about fifty-eight feet from the center of the main line on which the train was approaching, an entirely different situation is presented from that where a train is being propelled through an open country. The testimony shows that First Street is a much used highway, and that the crossing is in the vicinity of a rather thickly populated section of the city.

In the annotation to the case of *St. Louis & San Francisco Ry. Co.* v. *Moore et al.*, as reported in Ann. Cas. 1914B, 597, we find the law relative to the two situations very aptly stated, to wit: "The running of a train at a high rate of speed over a grade crossing in the country is not ordinarily deemed negligence." (Citing a number of cases.) And then: "The fact that the view of one approaching a railroad crossing is obstructed, may make it negligence to propel a train across such a crossing at a high rate of speed." (Citing a number of cases.)

In *Bilton* v. *Southern Pacific Co.*, 148 Cal. 443 [83 Pac. 440], the Supreme Court, in effect, approves just what we have here stated. In that case the following language appears in the opinion: "It is true that in the absence of any statute or ordinance on the subject, no rate of speed is negligence *per se*. When taken in connection with other circumstances, however, the situation is very different. We can conceive of cases where, independent of any statute or ordinance, a speed of 35 miles an hour in approaching a crossing would, under the circumstances there existing, be

so dangerous as at once to force all sensible and impartial men to the conclusion that those operating the train were not using reasonable care to avoid injury to others, and thus constitute negligence *per se*. However this may be, there can be no doubt that the question as to whether or not a rate of speed at a crossing is so dangerous or excessive as to constitute negligence, must depend upon the particular circumstances existing, and if the circumstances are such that reasonable and impartial men may well differ as to whether the speed maintained at the particular place showed a want of reasonable care, the question as to whether the Railroad Company was guilty of negligence in maintaining such speed is one for the jury.''

The respondents call our attention to plaintiffs' instruction number 15, and present the argument that this instruction cures any error in the giving of defendants' instruction number 7. This argument, however, does not appear to us to be logical. By instruction number 7 the jury was advised that the company possessed the right to propel its train at any rate of speed it saw fit. By instruction number 15 the jury was advised that the defendant company was required to run its train across First Street crossing in Chico, with due regard to the safety of persons who might be using said crossing, etc. This must be read in connection with instruction number 7, which eliminates the issue of speed from the management of the train. If it does not have this effect, then and in that case the two instructions are conflicting, and we cannot presume that the jury disregarded instruction number 7 and followed instruction number 15. (*Hoffman* v. *Southern Pacific Co.*, 101 Cal. App. 218 [281 Pac. 681].) This case also shows that the question of speed is for the jury. The only manner in which these instructions could be read together is as we have stated, that the jury was advised that the defendants were required to operate their trains over the crossing in question, with due regard to the safety of persons using the same, not considering the issue of speed. In other words, if the defendants took the other ordinary precautions to insure the safety of persons using the crossing, then and in that case it might propel its trains over First Street crossing at any rate of speed. This is not the law. A rate of speed which would be perfectly proper in an open country would be highly dan-

gerous and in some instances so dangerous as to be negligence as a matter of law. The conditions and circumstances are to be taken into consideration, and a rule which has no application in an open country may have binding effect and restrictive powers in thickly populated centers.

In *Cooper* v. *Los Angeles Terminal Ry. Co.*, 137 Cal. 229 [70 Pac. 11, 13], where the rate of speed of a train through a city of the sixth class was being considered, the court said: "Whether the rate of speed was reckless as well as dangerous was for the jury to determine from all of the evidence. Certainly the court was not warranted in saying, as a matter of law, that thirty miles an hour was not a reckless rate of speed for a train to make within the boundaries of a city of the sixth class." Being of the sixth class, the conclusion is reasonable that the city there referred to was less in population than the city of Chico at the time of the accident involved herein.

The recent case of *Southern Pacific Co.* v. *Stephens*, 24 Fed. (2d) 182, does not in anywise limit the rule relative to the propelling of trains through cities or relatively thickly populated districts. In the Stephens case the crossing where the collision occurred was in the country, and was a crossing which would be generally spoken of as unobstructed, and where one approaching the crossing could from time to time see, likewise, the approach of a train. Under such circumstances it was held that a speed of fifty miles per hour did not present the question of negligence as an issue for the jury to decide. With this holding we readily agree.

In *Young* v. *Pacific Electric Ry. Co.*, 78 Cal. Dec. 53, 279 Pac. 438 (see, also, 208 Cal. 568 [283 Pac. 61]), the court spoke of the rule there being considered as follows: "While it is well established that proof of a given high rate of speed, in the absence of a statute or ordinance, does not establish negligence *per se*, it is equally well established that a car traveling at the same high rate of speed is not necessarily operated in a manner free from negligence."

 The cases which we have cited, and the following cases from which we will not quote, establish the law in this state that whether a given rate of speed, in the absence of a statute or ordinance regulating the same, is or is not negligence depends upon the circumstances and the place where the train is being operated, and if the train is being

operated in a well built-up or populated section of a city, it is an issue for the jury as to whether the speed of the train involved constituted negligence as a matter of fact. (*Wykoff* v. *Southern Pacific Co.*, 4 Cal. App. 94 [87 Pac. 203]; *Burr* v. *United Rys. of San Francisco*, 163 Cal. 663 [126 Pac. 873]; *Ellis* v. *Central California Traction Co.*, 37 Cal. App. 390 [174 Pac. 407]; *Badostain* v. *Pacific Electric Ry. Co.*, 83 Cal. App. 290 [256 Pac. 576].) See, also, cases cited in *Johnson* v. *Southern Pacific Co. et al.*, heretofore referred to in this opinion involving the same crossing and accident. Other cases might be cited but the foregoing we deem sufficient.

In support of their contention that the giving of instruction number 7 constituted no error the respondents call attention to the case of *Davenport* v. *Waters*, 40 Ga. App. 99 [148 S. E. 772]. The instruction in that case, however, is readily distinguishable from the one under consideration. The opinion in the case of *Davenport* v. *Waters* sets forth the instruction, which reads: "There is no law in this State regulating the speed of trains approaching public crossings. The law as to trains approaching public crossings is as set forth in the Code section which I have just read to you in the charge. The judge had just read to the jury as a part of his charge, the language of the act of 1918. . . . That section sets forth the duty of a railroad engineer, when his train is approaching public crossings. It requires him to blow for the crossings, to maintain a constant and vigilant lookout along the track ahead of the engine while approaching a crossing, and to otherwise exercise due care in order to avoid injuring any person or property on the crossing or at any point on the track within 50 feet of the crossing. However, there is no specific provision regulating the speed of trains approaching public crossings, and the charge complained of was not error." Respondents also cite the case of *Eaton* v. *Southern Pacific Co.*, 22 Cal. App. 461 [134 Pac. 801, 806], where the court refused to give the following instruction: "A speed of 15 or 20 miles an hour is not of itself negligence." And the further instruction: "No unusual speed of the engine could have misled the plaintiff unless he saw or heard the engine and undertook to cross ahead of it, and to make such an attempt and fail is conclusive evidence of contributory negligence." The speed of the train was not in-

volved in that action, but if it had been, there is nothing in what is said concerning the instruction pertinent to the case at bar. In the Waters case the instruction as quoted shows clearly that it had reference only to some statute regulating the speed at crossings, and it may be conceded that there is no law in this state which regulated the speed of the train involved in this action, but that is readily distinguishable from an instruction that tells the jury that a railroad company has the right to operate its trains at any rate of speed it may see fit, except where the speed is limited by law, referring to regulations imposed either by statute or ordinance. Such is the effect of the given instruction.

██ Again, it is argued at considerable length that even though the train was passing over First Street at a high rate of speed, the speed had nothing to do with the collision. This is all based upon the negligence of the driver of the automobile with whom Dow was riding as a guest. The argument presented is on the theory that Dow is held to the same liability and responsibility as the driver of the car. The decisions, however, are all to the contrary, and are so numerous that they need not be cited. The law presumes that a guest riding in an automobile will take reasonable precautions to protect himself from injury, but does not require him to interfere with the management of a machine over which he has no control. Applying the doctrine that Dow was under the necessity of using reasonable precautions to protect himself, and following the presumption that one takes such precautions, it was for the jury to determine whether the speed of the train was such that Dow was prevented from exercising such precautions, it was for the jury to determine whether the speed of the train was such that Dow was prevented from exercising such precautions after the danger became imminent, or whether he was prevented from taking the last chance to save himself. The evidence is conflicting as to the ringing of the bell, and as to the blowing of the whistle, the evidence in this case, just as in the Johnson case, shows that the signals were not sounded as required by section 486 of the Civil Code.

A considerable portion of the briefs of counsel for both appellants and respondents is devoted to arguing the effect of the testimony introduced, but as we cannot say that the

withdrawal of the question of speed in connection with the other acts set forth relative to the operation of the 'train was not prejudicial, it would serve no useful purpose to follow the arguments of counsel as to what it was claimed on one side that the evidence establishes, and asserted on the other that the evidence proves.

It is sufficient to say that our attention has not been called to anything which cures the error committed by the giving of the instruction known as "Number 7," withdrawing from the consideration of the jury one of the issues involved in the action upon which the jury alone was entitled to pass.

The judgment is reversed.

Finch, P. J., and Thompson (R. L.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 26, 1930, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 23, 1930.