Jessie Nice, Administratrix of Estate of Earl D. Nice, Deceased, Appellee, v. Illinois Central Railroad Company, Appellant.

Gen. No. 9,213.

October term, 1939.
1940.

Heard in this court at the
Opinion filed January 15,

C. H. Woods, of Lincoln, for appellant; E. C. Craig, V. W. Foster, and C. A. Helsell, all of Chicago, of counsel.

Trapp & Trapp, of Lincoln, for appellee.

Mr. Justice Fulton delivered the opinion of the court.

Shortly after eleven o'clock in the forenoon of February 22, 1937, Earl D. Nice while driving his automobile south across the tracks of the appellant Illinois Central Railroad Company, in the village of Chestnut, Illinois, was struck by one of the appellant's trains as a result of which the said Earl D. Nice sustained injuries from which he died instantly. This action was brought by the appellee, Jessie Nice, as administratrix to recover damages for her husband's death. A trial in the circuit court of Logan county resulted in a verdict by a jury in the sum of $1,500 in favor of appellee, and upon this verdict judgment was entered by the court. This appeal is taken to reverse that judgment.

Chestnut is a small unincorporated village of about 300 people. The main track of the Illinois Central Railroad passes through Chestnut in a southwesterly and northeasterly direction. The main street of the village extended east and west north of the railroad right of way, and upon which the business places faced south. On the east side of this business block was located Dauphin street, which ran north and south and crossed the railroad approximately 140 feet south of the southeast corner of the business block, and about one block north of the high school and grade school building. There is also north of the main track a switch or business track with several buildings such as an elevator, a cement house, a coal shed, two small coal houses and a loading ramp, located west of Dauphin street and about six feet north of the business track. Between the business track and the main track is a depot and platform of the railroad, located west of Dauphin street and a short distance west of the depot is placed a tool house and an outdoor toilet. Where the roadway of Dauphin street passes over the tracks there is a space of 21 feet in width that is filled with crushed rock material flush with the rails, so as to make a smooth and even crossing. From this crossing to the

switch track north thereof is a distance of 55 feet. One block east of Dauphin street is another north and south street called Logan street which passes over the railroad tracks and a short distance further east is a State aid gravel road intersecting the railroad track.

The accident occurred at the crossing just east of the depot where Dauphin street intersects the railroad track. Immediately to the north of the crossing was a large "stop" sign and also a standard railroad sign with crossarms. There was also immediately north of the crossing on the west side of the roadway a tall signaling post upon which was a swinging disc or wigwag electrically operated which was set in motion automatically at least 20 seconds before any train would arrive at the crossing, and on the top of this signaling post was installed an automatic bell similarly constructed, operated and controlled.

The appellant railroad, prior to and on the day in question operated a fast passenger train, known as the Green Diamond, through the village of Chestnut, at the speed of about 90 miles per hour. On February 22, 1937, Nice, who was a trucker engaged in the general hauling business, had been to one of the elevators in Chestnut with a load of corn. He lived in the vicinity of Chestnut and had for a number of years, and was quite familiar with this particular crossing. After unloading his corn, Nice started down the east and west street north of the railroad, known as Olive street, going east until he came to Dauphin street, where he turned south and headed for the crossing, and when he made the turn south he was about 80 to 100 feet north of it. Just prior to his making the turn and during the entire time he was traveling south on Dauphin street, according to all the testimony of witnesses for both appellee and appellant, except that of Vida Nice, a daughter of the decedent, the wigwag was operating, the automatic crossing bell was ringing, two other cars traveling north on Dauphin street had stopped imme-

diately south of the crossing awaiting the train to approach and pass. The evidence was further undisputed that the horn or whistle and the automatic bell on the engine were continuously sounded as the train approached the crossing. The appellee's intestate was at all times driving his car at the rate of from 10 to 20 miles per hour until he was struck. One witness, Mrs. Gobleman, who lived just south of the main track on the east side of Dauphin street, testified that the local agent of appellant always came out on the platform and sometimes stopped children and cars from crossing the tracks as trains approached. She was corroborated somewhat by the testimony of the witness Merritt Williams. Another witness Watson, a mail carrier, testified that he was in the vicinity of the business or switch track as Nice was driving toward the crossing and fearing that Nice had not sensed the impending danger he ran out to the roadway along side of the automobile and pounded on the glass window on the east side of the car which was immediately to the left of the driver and shouted for him to stop. The weather was cloudy and cool with the temperature at about the freezing point. The decedent was 40 years of age and had a wife, son and daughter, who were dependent upon him for support. While the depot and other structures obstructed the view to the west in moving south on Dauphin street there was a point beginning about 64 feet north of the tracks down to a point about 40 feet north where the view was unobstructed down the track for a considerable distance. It was then obscured again until a person came to a point about 15 or 16 feet north of the north rail of the track, where the view was again unobstructed.

On the day in question, being a holiday, the agent was absent from the depot. The train was proceeding in a northeasterly direction.

The charges of negligence in the complaint upon which the appellee relies were:

1. That appellant carelessly, negligently and recklessly operated its fast passenger train at a dangerous, reckless and excessive rate of speed.

2. That appellant usually placed a station agent as crossing watchman at the crossing in question to signal and give warning to persons approaching; that such custom was well known to appellee's intestate and was relied upon by him; and that appellant negligently failed and refused to have its agent or other crossing watchman at the depot on February 22, 1937, for that purpose.

3. That appellant negligently maintained an electric wigwag signaling device at said crossing at such a height above the ground that appellee's intestate, with ordinary care in approaching, could not see the same.

A motion to direct a verdict was made by appellant both at the close of appellee's proof and at the close of all of the testimony. The facts in the case are not seriously in dispute.

It is hard for this court to see in this day and age, and under the circumstances proven in this case, how it can determine that it is negligence *per se* to operate a train at the rate of 90 miles per hour through the village of Chestnut.

Neither can it be reasonably determined from the evidence in this record that the appellant ever assumed the duty of maintaining a crossing watchman at the crossing in question. It is true that when a railroad assumes the duty of maintaining gates or a flagman at the crossing of its tracks with a public street or highway, it is bound to discharge the duty with due care, whether or not it was obligated so to do by statute or ordinance, and is liable for damages to a person injured for a failure to perform such duty, *Greenfield v. Terminal R. Ass'n of St. Louis*, 289 Ill. App. 147, but the proof in this case falls far short of the assumption of such duty as shown by the opinion in the foregoing case.

The record is bare of any evidence tending to show that appellee's intestate had any knowledge of such custom or relied upon the same. The question of crossing protection and the necessity therefor, and the method and manner of protecting the same is largely within the jurisdiction of the Illinois Commerce Commission and there is no showing here that the crossing in question was such as created special hazards requiring gates, a watchman or other additional warning.

The fact that from a certain point in the highway the view of the wigwag was obscured to the driver of an automobile did not in any manner relieve him of the duty to use due care commensurate with the circumstances. *Sunnes v. Illinois Cent. R. Co.*, 201 Ill. App. 378.

Aside from the questions of negligence on the part of the appellant railroad, there is still the question as to whether or not the appellee has sustained the burden of proving that her intestate was in the exercise of due care and caution for his own safety just prior to and at the time of this accident. We are not unmindful that the Supreme Court has said that the question of contributory negligence is one which is pre-eminently a fact for the consideration of the jury. *Blumb v. Getz*, 366 Ill. 273. However, in this case we have the picture of a man driving onto a railroad track in the face of many warning signals. The wigwag was in operation, the automatic crossing bell was ringing, a "stop" sign and a standard railroad sign with cross-arms were placed at the crossing within easy view of the driver, another man running alongside the car and slapping the window next to the driver and shouting warning for a distance of 30 to 40 feet, two cars traveling north, stopping on the south side of the track awaiting the approach and passage of the train before proceeding, as well as the horn or whistle and the automatic bell on the engine sounding continuously. Most of these warnings were seen and heard by many people

for a distance of 100 feet and over. To utterly disregard all of these signals and warnings seems to us to indicate an entire absence of due care. In *Greenwald v. Baltimore & Ohio R. Co.,* 332 Ill. 627, the Supreme Court of this State said:

"The rule has long been settled in this State that it is the duty of persons about to cross a railroad track to look about them and see if there is danger, and not to go recklessly upon the track but to take proper precaution to avoid accident. It is generally recognized that railroad crossings are dangerous places, and one crossing the same must approach the track with the amount of care commensurate with the known danger, and when a traveler on a public highway fails to use ordinary precaution while driving over a railroad crossing, the general knowledge and experience of mankind condemns such conduct as negligence. . . . The question of due care on the part of a plaintiff is a question for the jury when there is any evidence given on the trial which, with any legitimate inference that may be legally and justifiably drawn therefrom, tends to show the use of due care, but where the evidence, with all legitimate inferences that may be legally and justifiably drawn therefrom, does not tend to show due care on the part of plaintiff the trial court is justified in instructing the jury to return a verdict for defendant."

The allegations of the complaint did not properly charge wilful and wanton misconduct and the case was tried and the jury instructed on the theory of general negligence and we deem it too late for the appellee to raise that question in this court.

Because of the view we take of this case it will not be necessary to pass upon the other questions raised in the brief of the appellant and the judgment of the trial court is therefore reversed and the cause remanded to the circuit court of Logan county for a new trial.

*Reversed and remanded.*