Live Stock National Bank of Chicago, Administrator of Estate of Magnus Rinnan, Deceased, Appellant, v. Guy A. Richardson and Walter J. Cummings, Receivers, et al., Appellees.

### Gen. No. 41,967.

Opinion filed April 20, 1943.

V. RUSSELL DONAGHY and MATKOVIC & NELSON, all of Chicago, for appellant; DAVID A. SCHALLMAN, of Chicago, of counsel.

FRANK L. KRIETE, CHARLES E. GREEN and ARTHUR J. DONOVAN, all of Chicago, for appellees; JOHN R. GUILLIAMS, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

An action to recover damages for the death of Magnus Rinnan, who was struck by a street car and died three days later as the result of the injuries received in the accident. At the close of plaintiff's case the trial court, upon motion of defendants, instructed the jury to find defendants not guilty. Plaintiff appeals from a judgment entered upon the verdict.

Plaintiff's complaint consists of two counts. The first count charges general negligence; also that defendants (a) carelessly and negligently operated the street car at a speed greater than was reasonable and proper, and (b) operated and controlled the street car without keeping a good, proper and sufficient lookout. The second count charges wilful and wanton conduct in the operation of the street car, but as plaintiff in its brief does not contend that defendants were guilty of wilful and wanton conduct the second count may be disregarded.

Plaintiff's intestate, at the time of the accident, was forty-six years of age, single, and resided with his mother and father at 749 North Lockwood avenue, Chicago, where he was born. His eyesight was good. He was a machinist by trade. He served in the first World War and upon his return from France he became a truck driver, and at the time of the accident was in the employ of the Cuneo Press. On the day of the accident he finished his work about noon. He was wearing an American Legion cap, as the Legion was holding a convention in Chicago. The accident occurred about three o'clock p. m. The only witness who testified as to the accident was William Lee Spain. Upon direct examination he stated that at the time in question he and his wife were walking north on the sidewalk on the east side of Wabash avenue; that they were about 200 feet south of Jackson boulevard when they first saw the decedent; that he "happened to see a man—there were quite a few people there —but this man in particular seemed as though he wanted to get on the car, which was coming north. He stepped out and the street car slowed up. It slowed up quite a bit like it was going to stop, and he stepped out a little further. The street car picked up speed and hit him. The front end of the car caught him, spun him around, striking the panel, I believe is what you call it. It caught him and threw him, and it seems as though he fell underneath;" that when he, the witness, first saw the street car it was going about ten or fifteen miles an hour; that he did not hear any warning sounded by the car; that the decedent, when he first saw him, was about fifty feet south of Jackson boulevard; "he was looking towards the street car, I would say it was toward the west." Upon cross-examination the witness testified that it was a clear, bright day; that there were quite a few people on the sidewalk; that he saw a great many

men with American Legion caps on or wearing Legion uniforms; that when he first saw the decedent the latter was about fifty feet south of the Jackson boulevard crosswalk; that he was standing by a pillar of the "L," on the south side of the pillar; that he was standing about five feet east of the east rail of the northbound track; that the street car was on the northbound track and was making the usual noise; he could hear the wheels on the rails; that when he first saw the man the street car was about 150 feet away—south from him; that the man was looking west; that he "don't know which way he was looking, but his head was turned west;" that when he first observed the man standing there the street car was about 150 feet away, south of him; that when he first saw the car it was 150 feet south of Jackson boulevard; that "there was a [street] car right ahead of it at that time;" that when the street car that was approaching from the south started to slow up the man started to walk; that he stepped over to the track; that the street car was about forty or fifty feet away from him when he started to walk toward the track; that "he got just about right where I, or anyone else, would get on the car;" that he did not step on the east rail of the northbound track; "I don't think he was plumb on the rail, but was standing right there where you catch the car, and stepped right out towards the rail;" that he took about three or four steps toward the rail; that he was standing behind the first pillar from the corner, about forty or fifty feet south of the crosswalk of Jackson boulevard; that the man was standing there five feet east of the northbound track, and "there was nothing to obstruct his view;" that the street car was about fifty feet away when it started to slow down and he just stepped out; that "by stepping out I mean he stepped out just like anyone else would when the car was going to stop to get on. The car never stopped until after he was

struck," about fifty feet south of the south crosswalk of Jackson; that he saw the corner of the front end of the car hit the decedent and spin him around; that he stepped out there when the car was still fifty feet from him when it started to slow down; that "he stepped out there just like most anyone would catching the car;" that then the street car picked up speed and when it came to a stop the man was under the rear trucks of the car. From the testimony of other witnesses it appears that decedent's leg was caught between the two wheels of the rear truck of the car and was partially severed from the body. The street car was raised and decedent was extricated, a tourniquet was applied to the leg below the hip to stop the bleeding, and decedent was taken in a patrol wagon to St. Luke's hospital, where he died on September 29.

The law is clear that if the decedent intended to become a passenger upon the car and was struck by the car because he stood too close to it as it approached he would be guilty of contributory negligence as a matter of law. See *McCausland v. Chicago City Ry. Co.,* 198 Ill. App. 200; *Covert v. Rockford & Interurban Ry. Co.,* 299 Ill. 288, 290; *Foreman Bank, Admr. v. Chicago Rapid Transit Co.,* 252 Ill. App. 151, 154; *Garvey v. Rhode Island Co.,* 26 R. I. 80. Many other cases to the same effect might be cited, but the able counsel for plaintiff deny that the evidence supports the theory of fact that the decedent was intending to become a passenger upon the car and insist that the evidence supports the theory of fact that he was intending to cross Wabash avenue from the east to the west side; "that by decreasing the speed of the street car when it was a considerable distance away from the place where plaintiff was in the street, the motorman thereby indicated that he did so for the purpose of permitting plaintiff's intestate to cross in front of said street car; that if he didn't give him an express invitation, at least an implied one was thereby given him to continue to

cross the street; that the carelessness and negligence of the motorman in suddenly and without any warning increasing the speed of the street car after first slowing it down and after said decedent proceeded to further cross the street, was the proximate cause of the injuries which resulted in the death of said decedent, and that therefore the defendants are liable for the death.'' Defendants contend that the evidence of the witness, Spain, does not support plaintiff's theory of fact that the decedent was attempting to cross Wabash avenue when he was struck. We are forced to the conclusion that Spain's testimony does not support plaintiff's theory of fact. When Spain first saw the decedent the latter was standing about five feet east of the east rail of the northbound track and just south of an ''L'' pillar that was located about fifty feet south of the crosswalk of Jackson boulevard. In that position he was safe from passing cars or from northbound vehicles passing to the east of the pillar. How long the decedent had been standing there prior to the time that Spain first observed him does not appear. That he was waiting there for some purpose is obvious. If he intended to cross Wabash avenue the safe place for him to cross was the crosswalk used by pedestrians at Jackson boulevard, which was only fifty feet away from where he was standing. He had lived all his life in Chicago, was employed as a teamster, and undoubtedly had the common knowledge that street cars stop with the front end of the car at or near the crosswalk, which places the rear end of the car approximately fifty feet away from the crosswalk. It is significant that the decedent was waiting fifty feet south of the crosswalk, at a place where he would stand if he intended to board the rear platform of the car when it stopped at the regular stopping place. Spain testified that when he first saw the deceased, ''he was looking towards the street car;'' that the car was then 150 feet to the south of the decedent and traveling ''about

ten or fifteen miles an hour,'' so that the decedent had had ample time to cross the northbound track, ahead of the street car, if he intended to cross Wabash avenue, but he waited until the car ''was forty or fifty feet away from him,'' ''when he stepped out just like most anyone would catching the car;'' ''when the street car started to slow up, he stepped over to the track.'' When the decedent was standing just south of the pillar he was ''about five feet east of the east rail.'' The street car overhangs the rail at least one and one-half feet, and as the decedent was struck by the northeast corner of the front of the car he had moved but three and one-half feet from the place where he had been standing to the place where he was struck. As Spain testified: ''He got just about right where I, or anyone else, would get on the car. He didn't step on the east rail of the northbound track. I don't think he was plumb on the rail, but was standing right there where you catch the car.'' The only reasonable inference from the testimony of Spain is that the unfortunate decedent, while in a place of safety, made an overstep that brought him just within the range of the northeast corner of the front of the car. He came in contact with that corner in such a way that he was spun around. In support of their theory of fact that the decedent was crossing Wabash avenue at the time in question counsel for plaintiff emphasize the fact that Spain testified that when the car was within forty or fifty feet of the place where the decedent was standing the motorman decreased the speed of the car, and they argue that the motorman thereby indicated that he decreased the speed of the car for the purpose of permitting the decedent to cross in front of said street car, and that the proximate cause of the injuries which resulted in the death of the decedent was the result of the action of the motorman in suddenly and without any warning increasing the speed of the street car. Spain testified that there was another street car on the north-

bound track right ahead of the street car in question, which fact accounts for the slowing down of the speed of the car in question. When the car ahead cleared the stopping place it was necessary to apply additional power to the car in question to enable it to proceed to the stopping place. Spain testified that "the street car picked up speed." There is no evidence to warrant the assumption that the speed was increased more than enough to enable the car to reach its stopping place at the crosswalk. Spain further testified that the car in question "never stopped until after the decedent was struck." That the car ahead cleared the stopping place is evident from the fact that when the car in question finally stopped its front end was near the Jackson boulevard crosswalk. In our judgment no other reasonable inference can be drawn from the evidence than that the decedent intended to board the car in question. Spain repeatedly stated that the actions of the decedent indicated to him that the decedent intended to board the car. While plaintiff's counsel would have been justified in moving to strike such testimony they did not see fit to do so. In our judgment, to hold with plaintiff that the testimony of Spain supports its theory of fact that the decedent was crossing Wabash avenue at the time that he was struck would require the application of guesswork and conjecture. There is no evidence tending to prove that plaintiff's intestate was in the exercise of due care for his own safety at the time and place in question, and therefore the trial court was warranted in instructing the jury to find defendants not guilty.

Defendants strenuously contend that even if it could be held that there was evidence to support plaintiff's contention that the decedent was crossing Wabash avenue at the time in question, nevertheless, under the facts and circumstances in evidence, the decedent was guilty of a want of due care as a matter of law, but we do not deem it necessary to pass upon this contention.

The fatal accident to the deceased, a former soldier, upon a day when his comrades in arms were holding their reunion in Chicago, was a most regrettable event, but we are bound, under the facts and the law, to hold that defendants were not responsible for the accident.

The judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and FRIEND, J., concur.