**BARRETT v. CHICAGO & N. W. RY. CO.**
**No. 10807.**

United States Court of Appeals
Seventh Circuit.
Sept. 15, 1953.

Finnegan, C. J., dissented.

---

Lowell Hastings, Drennan J. Slater, Robert W. Russell, Chicago, Ill., for appellant.

Errett O. Graham, John A. McElligott, Bruneau E. Heirich, Wm. C. Wines, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

This is an appeal from a judgment in favor of the plaintiff, in an action brought under the Illinois death by wrongful act statute. The case was tried to a jury which brought in a verdict for plaintiff, and in answer to an interrogatory, found that plaintiff's intestate, John D. Barrett, was in the exercise of ordinary care for his own safety. Defendant's motions for judgment notwithstanding the verdict and, in the alternative, for a new trial were denied.

The accident occurred on a clear, dry day at about 10:00 A.M. on January 10, 1951, at defendant's Ravenswood, Illinois, station. The train involved was a streamliner consisting of a diesel locomotive and five cars and was enroute from Chicago to Milwaukee, travelling on the most westerly track at a speed of about seventy miles per hour. The tracks, platform and waiting station were elevated about ten feet above the street level. The platform was over two hundred and fifty feet in length and in excess of fifteen feet in width. A shelter was provided for passengers waiting on the platform. A Mrs. Koelln was the only person, other than plaintiff's intestate, who was on the platform as the train approached from the south.

The complaint alleged that on January 10, 1951, plaintiff's intestate was on the Ravenswood station platform as a passenger or "possible passenger," and was in the exercise of ordinary care; that in the operation of its railroad line, station and train, defendant owed the duty of exercising the highest degree of care, consistent with the operation of its business, for the safety of plaintiff's intestate. Defendant was charged with negligence in (a) operating the train at a high, dangerous and unreasonable rate of speed, (b) failing to give warning of the train's approach and (c) causing unusual currents of air or vacuums at the place where plaintiff's intestate was standing on the platform. The charge of negligence based upon alleged failure to give warning of the train's approach was abandoned in the trial court.

The deceased was thirty-one years of age, of athletic build, and apparently with no defect of hearing or eyesight. He first stood and then walked upon an adequately wide platform which contained no defects which in any way contributed to his injuries.

Mrs. Koelln testified that when the train was seventy-five to one hundred feet distant plaintiff's intestate was

about eight feet from the tracks and that he started to run "and he ran just like sideways, he was running forward a little on an angle. He ran toward the tracks. I would say I saw him take four or five steps." As plaintiff's intestate got closer to the engine, Mrs. Koelln turned her head and did not see the actual impact of the diesel engine and the body of the deceased.

Lawrence White was on the ground level near the station. He heard the train approaching from the south when it was some blocks away. White saw the deceased walk on the station platform toward the shelter and the approaching train. White did not see Barrett come in contact with the engine, as shortly before the impact Barrett passed out of his range of vision.

The engineer and the fireman of the approaching train saw the deceased run from three to six steps toward the tracks, and noted he was about eight feet from the track edge of the platform when he began to run. No part of the engine overhung any part of the platform or even reached its edge.

When the front of the engine reached a point ten to fifteen feet north of the shelter on the platform, deceased was struck by the front of the engine at a point a little left of center. His body was thrown from one hundred to one hundred and fifteen feet north and from twenty-five to thirty-five feet west of the point of contact.

We think it is extremely doubtful that there was any question of negligence on defendant's part which should have been submitted to the jury. Plaintiff's expert on air currents admitted that the force of any air currents set in motion by the engine would have reached the deceased after the front of the engine had passed, but the deceased was struck by the front of the engine and his body was thrown over one hundred feet in the direction in which the train was travelling. No contention was made that there was anything negligent about the construction of the diesel engine or the cars. It is difficult to conceive that there was a duty on the defendant to foresee that ordinary air currents outward and parallel to a train travelling seventy miles per hour would cause an apparently healthy and vigorous young man to fall in a forward direction into the path of the train.

The complaint alleged that the speed of the train was negligence *per se,* but that argument was not pressed in this court. In Nice v. Illinois Central R. Co., 303 Ill. App. 292, 25 N.E.2d 104, the court held that operating a train at ninety miles per hour through a small unincorporated village was not negligence *per se,* although a wig-wag protected grade crossing was involved. In Letush v. New York Central R. R. Co., 267 Ill.App. 526, where the train was brought to an emergency stop to avoid hitting a stalled automobile, the court held that although the train was travelling at sixty-five to seventy miles per hour, and a grade crossing was involved, such speed was not shown to be excessive. Here, a modern stream-line train was operated at seventy miles per hour at a place where the tracks were elevated, and where there were no crossings for either automobiles or pedestrians.

The plaintiff is, of course, entitled to have this case considered here in the light of the evidence most favorable to him, and in the light of all favorable inferences that may be made therefrom. Conceding that the evidence, including the testimony of plaintiff's expert Trumpler, made defendant's alleged negligence a jury question, nevertheless we are of the opinion that there is no evidence in the record from which the jury could reasonably infer that the deceased was in the exercise of ordinary care for his own safety.

Defendant was not charged with wilful and wanton conduct. Hence, under the law of Illinois, it was plaintiff's duty and burden to prove that the deceased exercised ordinary care for his own safety at the time of and immediately before he was struck by the diesel engine. Swigart v. Chicago & North Western Railway Co., 7 Cir., 180 F.2d 177; Chicago, B. & Q. R. R. Co. v. Mahara, 47

Ill.App. 208. We think that the plaintiff has wholly failed to sustain such burden.

■ Plaintiff's intestate was proceeding in a southerly direction on an adequately wide platform and, until he started on a diagonal course, was about eight feet from the nearest rail. The approaching train was plainly visible. There was no obstruction to deceased's vision, nor were there distracting noises, and no reason is suggested why he could not and did not see and hear the approaching train. He started his diagonal course from a place of safety when the engine was about one hundred feet distant and before any air currents from the engine or train could have reached him. He persisted in his diagonal course until he was struck by the front of the engine. In our opinion plaintiff's intestate was guilty of contributory negligence as a matter of law, which proximately caused his injuries and death.

Reversed.

FINNEGAN, Circuit Judge, dissents.