Sandra LARSEN, Administratrix of the Estate of Ludwig Larsen, Deceased, Plaintiff-Appellee,

v.

CHICAGO AND NORTH WESTERN RAILWAY COMPANY, a corporation, Defendant-Appellant.

No. 12039.

United States Court of Appeals Seventh Circuit.

Dec. 6, 1957.

Robert W. Russell, Chicago, Ill., Edward Warden, Chicago, Ill., for defendant-appellant.

Lester E. Munson, Chicago, Ill., Louis A. Smith, Simon Herr, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and MAJOR and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff's decedent was struck and killed by defendant's train on November 13, 1954. This action was for the recovery of damages sustained by plaintiff as a result of decedent's death, allegedly caused by the negligence of defendant while the decedent was in the exercise of due care and caution for his own safety. Judgment in the amount of $15,000 was awarded plaintiff. From this judgment defendant appeals.

The case is unusual in many respects, particularly in that it has twice been tried by a jury and in each instance a verdict returned in favor of defendant. The same judge presided at both trials and at each the same five occurrence witnesses testified on behalf of plaintiff. Defendant introduced no evidence at either trial. The testimony offered by plaintiff was substantially the same at each trial. The first trial commenced November 26, 1956. Defendant's motion for a directed verdict in its favor was made and denied at the close of plaintiff's evidence. On November 30, 1956, the jury returned its verdict in open court, finding the defendant not guilty, upon which judgment was entered. Plaintiff's oral motion for a new trial was immediately allowed. Plaintiff was permitted subsequently to file a written motion in support of the oral motion, and a further order was entered allowing the motion for a new trial.

The second trial commenced February 4, 1957. At the close of plaintiff's evidence, on February 5, 1957, defendant presented a motion for a directed verdict, which was denied the following day. Plaintiff also presented a motion for a

directed verdict, which was taken under advisement. On February 7, the jury returned its verdict in open court, again finding defendant not guilty. The jury was polled, on request of plaintiff's counsel, and each member affirmed the jury verdict. At that time the court denied defendant's request for the entry of a judgment upon the jury verdict. Thereupon, the court allowed plaintiff's motion for a directed verdict and instructed the jury to assess plaintiff's damages. The jury returned its directed verdict fixing plaintiff's damages in the sum of $15,000. Judgment was entered on the directed verdict in favor of plaintiff and against defendant in such amount.

Defendant attacks the rulings of the trial court which followed both the first and second trials. As to both trials it contends that the court erred in its refusal to direct a verdict in its favor. As to the first trial it is argued that the court was without jurisdiction to enter an order for a new trial on motion of plaintiff after the entry of judgment on the jury's verdict. In any event, it is contended that the granting of a new trial under the facts presented and the applicable law of Illinois was an abuse of discretion. As to the second trial, it is contended that the court erred in directing a verdict in favor of plaintiff, thus nullifying the verdict of the jury in defendant's favor. This argument rests upon the premise that plaintiff, under the evidence considered in a light most favorable to her, was entitled to nothing more than a submission to the jury on the critical issues of negligence and contributory negligence, and that defendant was entitled to a judgment on the verdict rendered upon such issues. It is further urged that the court was without authority under the circumstances to direct a verdict in plaintiff's favor and that its refusal to enter judgment in favor of defendant upon the jury verdict was erroneous as depriving defendant of a jury trial.

In the view which we take of the case, as subsequently disclosed, we think no useful purpose could be served in discussing or deciding the alleged erroneous rulings which followed the first trial. We shall, therefore, direct our attention to the second trial and the rulings incident thereto. A statement of the proof offered by plaintiff is thus required.

As already noted, plaintiff's decedent was killed when struck by defendant's seven-coach passenger train, which was scheduled to leave Chicago at 1:30 p.m., terminating at Williams Bay at about 3:30. It was powered by a steam engine forty to fifty feet in length, equipped with cab, smokestack, bell and whistle. The unfortunate incident occurred at the Jefferson Park station, where the train was not scheduled to stop. At that station defendant maintained three tracks which extended substantially east and west. Westbound trains operated on the southern track, eastbound on the northern track, and trains operating in both directions used the center track. A platform was maintained between the center and southern tracks for the use and convenience of passengers. The platform was of crushed stone or gravel, twelve to eighteen feet in width and from one to two blocks in length. The platform had wooden retaining sides, three or four inches in width. Defendant's train approached the station from the west at an estimated speed of thirty to forty miles per hour.

Plaintiff's decedent was familiar with the platform and surroundings as he had been a regular passenger of defendant from and to that station for many years. On the day in question he appeared at the station and sat on the north edge of the platform, with his feet out in the roadbed. (While we find no direct testimony, it is apparent that the decedent intended to become a passenger on a later train.) Seven or eight other persons on the platform saw the train approaching when it was a mile or more from the station. At about that time decedent got up and walked to the south side of the platform (the side next to the track on which the train was approaching). The other persons on the platform

as the train approached moved in the opposite direction, that is, to the north side of the platform (away from the side on which the train was approaching). The decedent took a position close to the platform edge, with his back to the approaching train. Defendant's engineer saw him before the engine reached the east end of the platform and blew the whistle at that time. The whistle was sounded many times and continued to be sounded up to the time of the accident. In addition, the bell was ringing, automatically and continuously. Both the bell and the whistle were heard by all of the witnesses who testified. The engineer applied the emergency brake when the engine was about one hundred feet from decedent, who did not move from his position at the edge of the platform along which the train was passing. While the engine was passing decedent turned his head to the left and was struck on the left side of the head by some part of the engine. From the injury thus received, his death occurred shortly thereafter.

Plaintiff's sole argument in support of the contention that defendant was negligent, so far as we can ascertain from her brief, is that the decedent was struck by a projection extending out from the body of the engine. As stated in her brief, "The accident could not have occurred except that something extended out from the engine of which defendant had control. The distance between decedent and the engine was too great to permit contact between it and him. The thing that extended from the train should not have been there. It would not have been there except for the failure of defendant, through its employees, to remove projecting objects from the locomotive."

This projection theory is based upon the testimony of witness Fuller, who stated, "A projection on the side of the engine struck him. It struck him in the head. On the left side of the head." Later, the same witness stated, "I testified that something on the side of the engine struck him. It was some regular part of the train. It was one of the working parts on the side of the engine." At the first trial this same witness testified, "As he was standing there, facing away from the train, there was a steam engine—there was a projection—I don't know what to call it—a projection on the side of the engine, a normal part of the engine, which struck him on the side of the head as it went by him." It is evident that the testimony of this witness is without probative value on plaintiff's projection theory.

Plaintiff also argues that it is inferable from the distance between decedent and the engine that decedent would not have been struck if something other than its regular and ordinary parts had not been projecting from the engine. On this score plaintiff contends that viewing the evidence most favorable to defendant, decedent was standing at least one foot away from the edge of the platform. This is hardly an accurate statement. The witness Fuller testified on this point, "He was standing, at the most, a foot from the south edge of the platform. Approximately a foot." The witness Doren Galandak testified, "The man's foot was actually on the wooden part, one was on the wood, and one was on the stone. * * * As best I remember it the man was standing there with one foot on the wooden strip and one foot on the gravel." This witness further testified that decedent did not look in the direction of the train but at the time of the last whistle "He turned then, just at the last second. He turned to his left." There was a clearance of from two to five inches between the side of the passing engine and the platform edge.

We doubt under these circumstances if any rational inference could be drawn that decedent was struck by a projecting object, that is, an object other than a regular part of the engine. Any inference so drawn, however, is dissipated by the direct testimony of defendant's engineer and conductor who testified on behalf of plaintiff that the engine was inspected and examined just prior to the current trip and there was no pro-

truding object on the side of the engine next to decedent other than the ordinary engine parts. More than that, the train stopped a short distance from the point of the accident and the engine was again inspected. The same witnesses testified that there was no protruding object on the engine at that time other than ordinary engine parts.

■■ The burden was upon plaintiff to prove negligence on the part of defendant which proximately caused the accident, and that deceased was free from contributory negligence which proximately contributed to cause the accident. We think the proof was insufficient in both respects. Certainly it must be held as a matter of law that plaintiff's decedent was guilty of contributory negligence. The rule which governs has often been announced by the Illinois courts. In Live Stock National Bank of Chicago v. Richardson, 318 Ill.App. 537, 541, 48 N.E.2d 597, 598, the court stated:

"The law is clear that if the decedent intended to become a passenger upon the car and was struck by the car because he stood too close to it as it approached he would be guilty of contributory negligence as a matter of law. [Citing many Illinois cases.]"

This court, in Barrett v. Chicago & N. W. Ry. Co., 7 Cir., 207 F.2d 5, at page 8 reversed a judgment in favor of plaintiff under circumstances quite similar to those of the instant case. In doing so, the court made a statement so descriptive of the instant situation that we think it bears repetition. The court stated:

"Plaintiff's intestate was proceeding in a southerly direction on an adequately wide platform and, until he started on a diagonal course, was about eight feet from the nearest rail. The approaching train was plainly visible. There was no obstruction to deceased's vision, nor were there distracting noises, and no reason is suggested why he could not and did not see and hear the approaching train. He started his diagonal course from a place of safe-

ty when the engine was about one hundred feet distant and before any air currents from the engine or train could have reached him. He persisted in his diagonal course until he was struck by the front of the engine. In our opinion plaintiff's intestate was guilty of contributory negligence as a matter of law, which proximately caused his injuries and death."

Plaintiff attempts to distinguish those and other cases on the ground that in such cases the decedent was struck by the front of the engine, while here he was struck by the side. We think this distinction is without material significance. At any rate, if a person places himself in a position of peril without reason or excuse, we do not know what difference it makes whether that position is in front or at the side of the engine insofar as the issue of contributory negligence is concerned.

Without the aid of authority, however, we would be compelled to hold that plaintiff's decedent was guilty of contributory negligence. Common sense would command such a conclusion. The evidence is undisputed that defendant's train as it approached was visible for more than a mile, its headlights were brightly burning, its bell was ringing and its whistle was blown eight to ten times. Other persons on the platform saw it and heard it, and moved away from the track on which it was approaching. At the same time, plaintiff's decedent moved from a place of safety across the platform and stood at the very edge with his back to the approaching train. There is no evidence, in fact no intimation, but that he was possessed of all of his faculties. He deliberately placed himself in a position of great peril. Under such circumstances, there is no basis for the view that he was in the exercise of due care and caution for his own safety. This conclusion finds strong support in the unusual situation of a jury twice exonerating the defendant railroad from liability.

Plaintiff in the court below relied heavily upon the doctrine of *res ipsa*

*loquitur.* In the brief filed in this court, it is suggested that the doctrine "fairly applies," whatever that may mean. In oral argument it was admitted, and we think properly so, that the doctrine is without application.

As already noted, at the conclusion of the second trial the court denied defendant's motion for a directed verdict and reserved its ruling upon plaintiff's motion for a directed verdict. The case was submitted to the jury and a verdict returned in open court in favor of defendant. The court denied defendant's request to enter judgment thereon. Instead, it allowed plaintiff's motion for a directed verdict, and the jury was so instructed. Judgment was entered upon such directed verdict. Defendant argues with some force that the court, under Rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., was without power or authority under the circumstances to direct a verdict in favor of plaintiff after the jury had returned a verdict in favor of defendant. In our judgment, this controversy need not be resolved. Assuming *arguendo* that the court had the power or authority, it is our conviction that it was clearly in error in directing a verdict in favor of plaintiff.

Assuming, contrary to what we have held, that plaintiff's decedent was not guilty of contributory negligence as a matter of law, and granting to plaintiff the benefit of all doubt, the most she was entitled to was a submission of her case to the jury. As stated in Wilkerson v. McCarthy, 336 U.S. 53, 57, 69 S.Ct. 413, 415, 93 L.Ed. 497:

> "It is the established rule that in passing upon whether there is sufficient evidence to submit an issue to the jury we need look only to the evidence and reasonable inferences which tend to support the case of a litigant against whom a peremptory instruction has been given."

The case having been submitted, there is hardly room for argument but that the verdict of the jury finds adequate support; in fact, it is difficult to conceive how a jury could have decided differently. Upon that verdict defendant was entitled to the entry of a judgment in its favor. The jury verdict renders immaterial the question as to whether the court erred in its refusal to allow defendant's motion for a directed verdict.

The judgment appealed from is reversed, with directions that the directed verdict in favor of plaintiff and the judgment entered thereon be vacated. It is further directed that judgment be entered in favor of defendant upon the jury verdict returned in open court.