## NABROTZKY v. SALT LAKE & UTAH R. CO.

No. 6460.  Decided March 24, 1943.  (135 P. 2d 115.)

*Judd, Ray, Quinney & Nebeker,* of Salt Lake City, for appellant.

*J. H. McKnight,* of Salt Lake City, for respondent.

McDONOUGH, Justice.

The plaintiff and respondent instituted this action to recover damages for personal injuries and damage to his automobile as a result of a collision of a southbound electric freight train with the automobile driven by plaintiff at about 11:30 P. M. on March 17, 1941, at 13th South and 1st West streets in Salt Lake City. A verdict was returned by the jury in his favor.

By its specifications of error, defendant and appellant assails, among others, the rulings of the court in denying its motion for nonsuit, and in denying the motion for di-

rected verdict in favor of defendant. The following facts are not disputed:

Plaintiff was driving eastwardly on 13th South street in Salt Lake City at the time of the collision. There are three sets of railroad tracks crossing this street in the vicinity of 1st West street. The Union Pacific Railroad Company tracks are the ones farthest to the west. On each side of the Union Pacific tracks there is a flasher-light wigwag bell signal, one signal being on the south side of 13th South just west of such tracks, and the other on the north side of the street just east of the same tracks. These tracks run north and south and cross the street at about a right angle.

Farther to the east, and measuring 37 feet east of the east rail of the Union Pacific tracks, are the mainline tracks of defendant Salt Lake & Utah Railroad Company. These tracks also cross 13th South street at about a right angle, although about 350 feet north, there is a slight curve and offset of about 15 feet, but the tracks run on 1st West street. On each side of these tracks of defendant company, there is a standard cross-bar railroad warning notice and signal, located in the usual positions with reference to these latter tracks. The flasher signals of the Union Pacific Railroad Company are activated only by trains on the Union Pacific tracks, and they have never had any connection with those of the Salt Lake & Utah Railroad Company.

There was an arc light on the south side of 13th South street about 27 feet east of the main-line tracks of defendant company, which light always has been operated and controlled exclusively by Salt Lake City. This light on the night in question well-lighted the entire intersection. Still farther to the east is a spur track of defendant company which crosses 13th South at an angle, in a southwesterly direction. About 200 feet south of 13th South street is an interlocker, at which all trains of defendant company must stop before attempting to cross the Union Pacific tracks farther to the southwest or be derailed automatically.

It further appears from the evidence that when a person is driving east on 13th South street, and has reached a point 156 feet west of the tracks, there are no buildings, trees or other objects to obstruct the view for 1,200 feet north of 13th South street on the main-line tracks of defendant company. There is nearly a 4 per cent upgrade in the pavement on 13th South approaching the level of the Union Pacific tracks from the west. The surface of the street is fairly level from that point on east.

In his complaint, after alleging the close proximity of the tracks of defendant company to the other railroad tracks and setting out facts alleging due care on his part, plaintiff alleges certain specific acts of negligence on the part of the defendant: (1) Failure to sound its whistle or to give any notice of the approach of the train; (2) not having a proper signal there to warn and notify plaintiff of the approach of the train; and (3) in "permitting at that very point a large arc light to blind and injure the view of any person's approaching in an automobile."

Admittedly, the only signal devices established by defendant company were the standard old-fashioned cross-bars attached to uprights with the words "Stop—Look—Listen." One was located at the south side of 13th South street west of the defendant's tracks, and the other was on the north side of the street east of the tracks. The arc light maintained by the city lighted up these railroad warning signs. Whether the defendant company had a duty to maintain flasher signals at this crossing because of its close proximity to the Union Pacific tracks, to prevent the public from erroneously relying on the Union Pacific flasher signal on the west side of its track as a signal covering all of these tracks, need not be determined in this case for reasons to be stated presently.

Obviously, the defendant could not be negligent in permitting the arc light to be situated at a public intersection which it had no legal power nor ability to control. The

plaintiff did not allege that defendant maintained such light. The evidence conclusively proves that Salt Lake City alone controls the location and operation thereof. Furthermore, the plaintiff testified that he was blinded because of the angle at which the light struck the windshield of his car as he came east up the slight raise to the level of the Union Pacific tracks.

Plaintiff does not allege that defendant did not have any signal, but only that it did not have a proper signal, and there is no dispute in the evidence that there were the above-described railroad warning signals in the usual positions in relation to its tracks.

The plaintiff testified that he drove east along 13th South street with the windows to his car closed. He was familiar with the tracks and the crossings. He had crossed the tracks a number of times. He had seen the wig-wag automatic flasher signals in operation in connection with the Union Pacific tracks. He stated that he took for granted these flasher signals were controlled by the movement of trains on all of these tracks. As he aproached the west set of tracks the lights of his automobile were bright, on high-beam, and projected the lights about 600 feet in front of his car. He stated that as he approached the tracks which were identified as the Union Pacific tracks, he slowed down to about 8 miles per hour, and he directed his attention to the automatic flasher signal west of the tracks on the south side of the street. He saw no light flashing and no train crossing, heard no bell ringing, so he proceeded to go onto the tracks looking straight ahead. As he drove up the raise to the Union Pacific tracks the light from the arc light above mentioned struck the windshield of his car at such an angle as to blind him temporarily, but he drove straight ahead and when he was crossing the main-line tracks of defendant company, he saw the train for the first time and his car was hit instantly and swung around in a circle. He was injured but got out of his car after the train stopped, and he talked to members of the train crew. There is conflict

in the testimony as to what was said, but when asked if he did not see the light on the engine of the train, he answered in the negative. He said he heard no bell ringing nor any whistle, and he declared he was traveling slowly. He did not know how fast the train was coming, but said it hit his car with great force.

For the purpose of determining whether the case should have been submitted to the jury, we will assume without deciding, the following: (1) That the positive statements of several of defendant's witnesses that the bell and whistle signals were given, were sufficiently contradicted by plaintiff; and (2) that plaintiff proceeded to cross the tracks on the assumption that the flasher signal at the west of the Union Pacific tracks was activated by trains on any of the three sets of tracks, and that because the flasher signal gave no warning of the approach of any train, he considered it safe to cross all of the tracks. We will assume further, without deciding, that the fact that Union Pacific Railroad Company had erected and maintained the described signaling devices in connection with its tracks imposed on defendant a duty to guard its tracks with similar devices, or at least to place some warning sign in the proximity of the Union Pacific flasher signal to the effect that such signal gives no warning of the approach of any trains on defendant's tracks.

We state each of the foregoing assumptions in face of the fact that defendant company had erected the cross-bar signs hereinabove described at the approach to its tracks from the west and east of the Union Pacific tracks, and the further fact that the flasher signal east of the Union Pacific tracks was at a place where it could not warn one approaching from the east of the presence of any trains on defendant's tracks, being located west of the latter.

Even if the evidence as to the alleged acts of negligence on the part of defendant were such as to require their submission to the jury in the event satisfactory proof of due care on the part of plaintiff had been produced, neverthe-

less, we are of the opinion that plaintiff's conduct was such as to constitute contributory negligence as a matter of law, and hence preclude recovery.

Plaintiff testified that as he came up the slight grade onto the Union Pacific tracks the light from the arc light struck the windshield at such an angle that he was momentarily blinded. Being familiar with these three sets of tracks, he could not help but know as a reasonably prudent man that if he failed to stop as soon as he cleared the Union Pacific track until he recovered from his temporary blindness from the glaring light, he would be driving blindly or at least with impaired vision into a zone of known danger. Unlike a stranger in that neighborhood, he knew he was driving onto the track of defendant company over which it frequently operated trains. He recklessly failed to exercise the caution and due care which he knew were essential in face of a known danger.

He testified that on the flasher signal of the Union Pacific Railroad on the west side of its tracks there was a sign which said "Three tracks," and that he took for granted that this flasher signal would give warning of the approach of trains on the track of defendant company, and that when he saw no light and heard no bell ringing at said signal he proceeded across the tracks, looking straight ahead and being temporarily blinded by the glare of the angle of reflection of the arc light on the windshield. His counsel argues that defendant had a duty to have a flasher signal of the same character installed on each side of its tracks to prevent deception of motorists. In effect he contends that the failure of the wig-wag signal-bell at the Union Pacific tracks to give him warning of the approach of a train on the tracks of defendant company justified him in assuming that it was safe to cross all three sets of tracks without taking any further precaution.

In so assuming he is clearly in error; for even if he had a right to assume in spite of his familiarity with the crossing and location of the several warning signals, that the

Union Pacific flasher signal was connected with the other tracks, he could not drive ahead in sole reliance on such assumption without taking the most elementary precaution. In *Pippy* v. *Oregon Short Line R. Co.*, 79 Utah 439, 11 P. 2d 305, 313, in discussing the effect of the failure of such a device to operate, as bearing on the question of contributory negligence, we said:

"There is no marked conflict in the decisions. A number of them hold that a traveler approaching and attempting to drive over a crossing may not wholly or solely rely on the silence or failure to operate of an automatic signal device and drive over the crossing without taking any other or further precautions for his own safety and escape the charge of contributory negligence. We are in accord with such holding."

Yet, respondent's evidence shows clearly that is precisely what he did. He looked at the signal until he reached the first track and then straight ahead, looking neither to the right nor the left to discover any approaching train after passing the signal. The evidence leaves no doubt that had he looked he would have seen the approaching train in time to avoid the collision.

Furthermore, the Union Pacific track is 37 feet west of the Salt Lake & Utah Railroad tracks. If plaintiff was going as slowly as he testified he was traveling, even if there was no warning of the approach of any train on any track at the time he looked at the flasher signal, assuming that the signal had been connected with all three tracks as plaintiff contended it should have been, when he passed the signal to go onto the Union Pacific track, the signal might very well have indicated the approach of a train on defendant's tracks. Plaintiff then would not be in a position to see the flasher light operate on the signal he had passed to warn him of the approach of a train on a track more than 40 feet to the east. Going at such a slow rate of speed, he therefore could not have placed sole reliance on such signal even if it had been connected with all three tracks as he assumed it was at the time.

He was conscious of the relative location of the tracks which were 37 feet apart. He still had a duty to look in the directions from which he knew the trains approached, and he could neither plunge nor edge forward blindly into a known danger zone. He had a duty to keep a proper lookout for his safety and to avoid contact with trains he knew operated over such tracks at frequent intervals. His view was unobstructed, and he could have seen except for the fact he was blinded momentarily and the further fact he did not bother to look to the right or to the left. He sought to excuse his admitted negligence in traveling forward onto the track of defendant in a temporarily blinded condition, by saying he heard no bell and no whistle. In view of the fact the windows of his car were up, the ordinary operation noise of a 1933 model automobile, and the fact he did not direct his attention to any signal after he observed the flasher signal was not working, he might very well not have heard any sound from defendant's train. However, even assuming such want of care on the part of defendant as claimed by plaintiff, it did not excuse plaintiff's palpable negligence.

The law in this jurisdiction is well stated in *Lawrence* v. *Denver & R. G. R. Co.*, 52 Utah 414, 174 P. 817, 820:

 " 'A person before attempting to cross a railroad track, and when an approaching train is in full view, is chargeable with seeing what he could have seen if he had looked, and with hearing what he would have heard if he had listened. In other words, where he apparently looks and listens, but does not see or hear the approaching train, it will be presumed that he did not look or listen at all, or, if he did, that he did not heed what he saw or heard.' "

In *Wilkinson* v. *Oregon Short Line R. Co.*, 35 Utah 110, 99 P. 466, at page 468, this court quoted:

 " 'The law defines precisely what the term "ordinary care under the circumstances" shall mean in these cases. In the progress of the law in this behalf the question of care at railway crossings, as affecting the traveler, is no longer, as a rule, a question for the jury. The

quantum of care is exactly prescribed as matter of law. In attempting to cross the traveler must listen for signals, notice signs put up as warnings, and look attentively up and down the track. * * * If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. Such conduct is held negligence per se.' " See also, to the same effect, *Pippy* v. *Oregon Short Line R. Co.*, supra.

In *Nuttal et al.* v. *Denver & R. G. W. R. Co.*, 98 Utah 383, 99 P. 2d 15, we held that before a motorist can be justified in making any assumption that signals will be given or that the train will be operated at a lawful speed, he must first reduce his own speed, listen for signals, and look attentively up and down the track. If the motorist could have seen the approaching train in time to escape by looking, it will be presumed either that he did not look, or, if he did look, that he did not heed what he saw.

The trial court should have granted the motion for a directed verdict, and having improperly submitted the case to the jury, the judgment is reversed and the cause is remanded to the district court with directions to set aside the verdict and judgment, and to enter judgment in favor of defendant, "no cause of action." Costs to appellant.

WOLFE, C. J., and MOFFAT, J., concur.

PRATT, J., on leave of absence.

LARSON, Justice (concurring).

I concur in the result because the evidence clearly shows plaintiff was guilty of contributory negligence. Beyond that I deem no comments or assumptions necessary.

HOYT, District Judge (dissenting).

I dissent. I think the question of plaintiff's contributory negligence was properly left to the jury. The fundamental rule should still obtain that a traveler is not guilty of negli-

gence if he exercises that degree of care which would be exercised under the same circumstances by a person of ordinary prudence. In this case the plaintiff testified that he took for granted that the flash signal would give him warning of the approach of trains on the track of defendant company as well as on the track of the Union Pacific Company. A man of ordinary intelligence and prudence might have assumed that. Plaintiff testified that he started to cross the Union Pacific tracks and was temporarily blinded by the glare of the reflection of the arc light on his windshield. It is said in the opinion that it was then his duty to stop instead of driving forward while unable to see objects ahead. I cannot think this his failure to do so proves that he did not use ordinary care. The tracks were only thirty-seven feet apart. If the automobile was traveling at eight miles per hour it would cover that distance in approximately three seconds. A man of ordinary judgment and prudence might easily have failed to make such a decision in such a short space of time. I think that is not a case to which the doctrine announced in the case of Wilkinson v. Oregon Short Line Railroad Co., referred to in the opinion, should be applied. Under the circumstances shown here we cannot say that the quantum of care is exactly prescribed as a matter of law. It seems to me it was a jury question. I also do not agree with the statement from Nuttall et al. v. Denver & R. G. W. R. Co., that "before a motorist can be justified in making any assumption that signals will be given or that the train will be operated at a lawful speed, he must first reduce his own speed, listen for signals, and look attentively up and down the track." In the case of crossings where flash signals are maintained I think it very doubtful that the motorist of only ordinary prudence and intelligence does all these things. To look attentively up and down the track is a wise precaution even at a crossing where such a signal is maintained, but I think we cannot exclusively say that this is the custom of the motorist of ordinary prudence—especially if we interpret the expression to mean that he

must look far enough each way to make certain that no train is approaching which might collide with his automobile. I believe it is a rather common tendency, where flash signals are maintained, for motorists to rely upon such signals. Also, I think that if the statement from the Nuttal case is announced as a general rule it may work injustice in some cases where the motorist, though negligent under that doctrine, is not guilty of any negligence which proximately contributes to the cause of the accident. Besides it is illogical and misleading to say that a motorist approaching a railroad crossing cannot presume that which the law presumes—that an approaching train will be operated at a lawful speed.