## YOUNG et al. v. BUCHANAN.

No. 7844.   Decided July 21, 1953.   (259 P. 2d 976.)

See 67 C.J.S. Parties, sec. 29. Unlicensed broker's right to recover for services. 8 Am. Jur., Brokers, sec. 154; 169 A.L.R. 767.

*N. J. Bates,* Richfield, for appellant.

*Dilworth Woolley,* Manti, for respondent.

McDONOUGH, Justice.

Appeal from a judgment entered in favor of plaintiff and against defendant for an alleged commission under a written contract of employment. The facts are clear and without dispute.

Real Estate Brokers and Salesmen were regulated under Title 82, Chapter 2, U.C.A. 1943 which is presently designated as Title 61, Chapter 2, U.C.A.1953. This title requires brokers and salesmen to be licensed by the State Securities Commission. A condition for such license is that the brokers shall be bonded and that salesmen shall work only under the supervision of a licensed and bonded broker. Plaintiff, desiring to sell real estate, approached one Bardsley, a licensed and bonded broker, sometime in the forepart of 1949 and requested permission to sell under Bardsley's authorization. Permission was granted by Bardsley and plaintiff was licensed as a real estate salesman in accordance with the statutory requirements. Bardsley, however, did not intend to conduct a brokerage or to be active in the real estate business. Hence, plaintiff and Bardsley expressly agreed that plaintiff was to act independently of Bardsley; was to pay all expenses; retain all commissions; and Bardsley was to take no responsibility and was to be implicated in none of plaintiffs transactions.

On June 12, 1949 defendant listed his property for sale with plaintiff. A standard real estate listing agreement

was signed by defendant and accepted by plaintiff. This agreement gave plaintiff, for a period of six months, the exclusive right to sell the property, and it further provided that if such property were sold within three months after the expiration of the six-month period to any person to whom the plaintiff had previously offered the property, then the agreed commission would be paid to plaintiff. Bardsley was not consulted by either plaintiff or defendant; was not a party to the agreement; and knew nothing thereof.

Upon several occasions plaintiff offered the property to one King, but closed no sale since King considered the asking price too high. The six-month period ended on December 12, 1949. Plaintiff, with defendant's permission, continued showing the property to various parties and some time in the forepart of February, 1950, the defendant reduced the asking price by $1,000. Plaintiff again contacted Mr. King and told him of the reduction. King stated that in view of the price decrease he was interested in the property, but made no further contact with the plaintiff. On February 17, 1950, within the three-month protection period, without notice to plaintiff, and by dealing directly with the defendant, King bought the property.

Defendant refused plaintiff's demand for commission and plaintiff commenced this action. The lower court decided plaintiff was entitled to compensation and joined Bardsley as an involuntary plaintiff. Judgment was then rendered against defendant and in favor of Bardsley for the use and benefit of the plaintiff. Defendant appeals.

Doubtless plaintiff rendered some measure of service resulting in Mr. King's purchase of defendant's property. It has long been established in this jurisdiction, however, that a broker or agent may recover only by virtue of contract and cannot recover upon the basis of quantum meruit. *Watson* v. *Odell,* 58 Utah 276, 198 P. 772, 20 A.L.R. 280; *Case* v. *Ralph,* 56 Utah 243, 188 P. 640.

Hence, the first question raised by this appeal is whether, under Title 82, Chapter 2, U.C.A.1943, the agreement between plaintiff and defendant was valid and enforceable by plaintiff. We hold that it was not.

Section 82-2-1, U.C.A. 1943, made it unlawful for any person to engage in the business or assume to act as a real estate broker or a real estate salesman within the state of Utah without first complying with the statutory provisions. Section 82-2-2, then defined a "real estate ■ broker" as including persons who for another and for a fee or consideration, "sells * * * or lists or offers or attempts or agrees to list" any real estate. This section expressly provided that a real estate broker shall have the right to fill out and complete such statutory or securities commission approved forms or legal documents needed to complete a transaction involving such realty. Section 82-2-3 defines a "real estate salesman" as any person employed or engaged by or on behalf of a licensed real estate broker for the purpose of accomplishing any act or transaction set out or comprehended by the definition of a real estate broker in Section 82-2-2 and Section 82-2-10 made it unlawful for any real estate salesman to accept a commission for the performance of any of the acts specified in Title 82, Chapter 2 from any person, except his employer, and provided that such employer must be a licensed real estate broker. The necessary implication of Section 82-2-10—that a salesman may not sue anyone other than his employing broker for his commission—was expressly established as law in 1951 by a legislative addition to Title 82 which provided that any action to recover a fee or commission must be instituted and brought by the broker under whom the salesman is employed. (See Section 61-2-18, U.C.A. 1953.) This same provision prohibits any person or association from bringing an action for the recovery of any commission for any act done, which is prohibited under the provision of this act to other than licensed real estate brokers, unless such persons are duly licensed under such act as a real

estate broker at the time such act or service was rendered. Such provision, while not applicable to transactions completed before its passage, is indicative of the legislative spirit and intent behind all of Title 82, Section 2 and particularly Section 82-2-10.

Under the facts, it is evident that plaintiff's operation as an unlicensed broker was in contravention of public policy and statutory mandate. That such fact was within plaintiff's knowledge is made manifest by his admission in open court that he could look only to a licensed broker for his commission and by his subsequent request to join Bardsley as an involuntary plaintiff in order to receive a judgment for his own use and benefit.

It is thus evident that the listing agreement between plaintiff and defendant was prohibited by statute; was invalid; and was unenforceable by plaintiff unless he could join Bardsley as an involuntary plaintiff under Rule 19(a), Utah Rules of Civil Procedure. Such is the second question raised by this appeal.

Rule 19(a), U.R.C.P. states that

"When a person who should join as a plaintiff refuses to do so, or his consent cannot be obtained, he may be made a defendant or, in proper cases, an involuntary plaintiff."

Plaintiff contends that he was the real party in interest; that he had a just claim against defendant; that under Title 82, Chapter 2, U.C.A. 1943 he was prevented from bringing the action; that at the time the listing agreement was signed, he was licensed under Bardsley; that Bardsley's presence before the court as a licensed broker was necessary in order for plaintiff to recover; and that joining Bardsley as involuntary plaintiff was therefore necessary and proper under the law. We do not agree.

It may well be that plaintiff is the real party in interest—providing any legal claim whatsoever exists against the

defendant. We believe none does. The agreement between plaintiff and defendant was unauthorized by statute. Such agreement could only have been valid if executed for and in behalf of Bardsley as authorizing broker. It was not. Bardsley had no knowledge of such agreement; was not interested therein; and had no intention of becoming so. Similarly, neither plaintiff nor defendant intended Bardsley to have any relationship to or interest in the listing agreement. Bardsley had no interest in this contract whatsoever. Hence, plaintiff could receive no interest under such agreement from Bardsley and was prevented by statute from having an interest in his own right. Thus, at no time was there a claim against defendant which was enforceable by Bardsley, by plaintiff, or by plaintiff through Bardsley.

It is true that Rule 19(a), U.R.C.P. states that a person or party may be joined as an involuntary plaintiff. Such person or party, however, must have some interest, affirmative or negative, which is beneficial or detrimental to the interest of the party desiring to so join the recalcitrant person. Bardsley had no such interest. He could bring no action against defendant based on the listing agreement since he was not a party thereto and had no assignment of interest therein. Similarly, defendant had no contractual cause of action against Bardsley since he made no agreement with Bardsley and none with plaintiff acting in Bardsley's behalf. Rule 19(a) does not permit one having no relationship or interest whatsoever in the conflict between the warring parties, to be drawn into the fray merely because the real party in interest,—who is barred by statutory provision from prosecuting the action in his own name and right—, is in need of such person to circumvent legislative mandate.

The judgment of the lower court is reversed. Costs to appellant.

WOLFE, C. J., and CROCKETT and WADE, JJ., concur.

HENRIOD, Justice (dissenting).

I dissent, respectfully suggesting that the majority opinion, in its endeavor to effectuate the purposes of Chapter 2 of Title 61, has misapplied that statute and has read into the agreement between Bardsley and Young, much that simply is not there.

This agreement is admittedly lawful and valid, unless one of the several statutes set forth in the majority opinion renders it illegal. A careful reading of each statute convinces me that none outlaws this agreement nor renders this rightfully-earned commission uncollectable, and that only by assuming facts not in the record—and that fly in the teeth of the findings of the lower court—can the majority sustain its position. Furthermore, there is no evidence in the record that the plaintiff failed to affirmatively comply with the statutory mandates.

Section 61-2-18, U.C.A.1953, seems to have no materiality in this case. That statute was passed in 1951, subsequent to this entire transaction, and does not and cannot affect contractual rights and obligations created prior to its passage. The 1951 legislative enactment can shed no light on the intent of the 1921 legislature which originally passed what is now Section 61-2-10, U.C.A.1953.

Chapter 2 defines a broker and sets forth what activities he may legitimately pursue, 61-2-2, U.C.A.1953, and provides that the broker must post a $1,000 bond. 61-2-6(b). Section 61-2-3 defines:

"The term 'real estate salesman' shall mean and include any person employed or engaged by or on behalf of a licensed real estate broker to do or to deal in any act or transaction set out or comprehended by the definition of a real estate broker in section 61-2-2 for compensation or otherwise."

The two sections which lend greatest support to the position of the majority opinion are 61-2-1:

"It shall be unlawful for any person, copartnership or corporation to engage in the business, act in the capacity of, advertise or assume

to act as a real estate broker or a real estate salesman within this state without first obtaining a license under the provisions of this chapter";

and, 61-2-10:

"It shall be unlawful for any real estate salesman to accept a commission or valuable consideration for the performance of any of the acts herein specified from any person, except his employer, who must be a licensed real estate broker."

In the case before us, all of the provisions precedent to the plaintiff's qualification as a licensed salesman were met. Bardsley was a bonded broker, and in that capacity, signed and filed with the Real Estate Division of the Utah Securities Commission an application to allow the plaintiff to operate as a salesman. This application was open to public inspection at all times. The rather apparent purpose of this entire statute is to protect the public from fraud. When Bardsley filed Young's application for a salesman's license he signed the clause labeled: "Employer's Recommendation of Salesman" which read,

"I hereby certify that the applicant whose name appears on this application is honest, truthful and of good reputation, and recommend that a license be granted the applicant."

The broker, Bardsley, thus held himself out as the employer of Young, vouched for his integrity and posted his bond as protection to those who dealt with him. It is clear that were this an action brought by a third party against the salesman, the broker, whether or not disclosed and whatever the agreement inter se, would be liable for the conduct of the salesman.[1] The signed application filed amounted to an ostensible agency relationship. The majority maintains, however, that the arrangements between Bardsley and Young, irrespective of the application provisions, may be and are such as to manifest the intent that no such agency or employment relationship be created. The

---

[1]Restatement of Agency, Sec. 31; Sec. 49, comment (b).

strongest evidence in support of that contention is the testimony of Bardsley:

"Q. Tell us whether or not you had a license from the State of Utah as a real estate broker during the year? 1949   A.   I did.

"Q. Tell us whether or not W. R. Young was employed by you as a salesman during that year?   A.   He was.

"Q. And was he so employed on May 29th of that year?   A.   Yes, sir.

"Q. Did you have any agreement or understanding with Mr. Young regarding the payment of commission which might be earned on any business that he transacted while employed in your office? A.   Yes sir.

"Q. Was that agreement in writing or just verbal?   A.   Verbal.

"Q. Will you tell the court what that agreement was?   A.   I had paid my state license and my bond for my commission. Mr. Young came to the office and wanted to know if he could write under my commission. I told him I only renewed my license so that the next year if I wanted to sell real estate, it would only cost me half the price that it would if I let it pass by, but I didn't intend to make any effort to sell real estate during the year 1949. And he asked if he could sell under my license and I told him yes, with this understanding, that he was to be responsible for all sales and that all contracts made must go to an attorney, that I wasn't to be implicated in any way whatsoever through court or otherwise and he was to have all that was made as commissions."

Bardsley also stated that he told the plaintiff that he would not join in a law suit "unless I have to."

It may be admitted that most of the usual prerogatives of a broker were thus given to the salesman.[2] But the statute does not expressly nor impliedly require that the broker personally conduct the business affairs. Rather, Section 61-2-3 authorizes the engaging of salesman-agents

---

[2]Normally in a principal-agent relationship, the agent is subject to the control of the principal. However, as the Restatement of Agency phrases it, 'Principal' * * * includes * * * both a person who has directed another to act on his account in business dealings or to represent him in hearings or proceedings but who has no control or right of control over the other's physical conduct and also a person who employs another to act in his affairs having such control * * *." Restatement of Agency, Sec. 1, Comment c, p. 9.

in the conduct of the business and no limitation is placed on the number or type of rights which the broker may delegate to them.

Young paid the $25 license fee Bardsley owed the city of Richfield, and Young testified that Bardsley told him to pay the expense of operating his (Bardsley's) brokerage. Young further testified that in the spring of 1949 he was working "at that time" under the "supervision" of Bardsley. Apperently the salesman understood the agreement to mean that he was to pay all expenses and receive all commissions *unless* a really big sale were made, in which case the broker was to participate, for he said:

"I work under a broker and when he and I would run across a real estate deal of any consequence, say a big farm or ranch, or something, we would put that deal over between ourselves, but I still would be under him."

The facts are *not*, as the majority states, clear and without dispute. They are very much in dispute. The agreement between Bardsley and Young, as pieced together from the application, the verbal understanding, the conduct of the parties and the testimony of each, obviously and reasonably is subject to more than one interpretation. The interpretation employed by the majority opinion resolves this ambiguity by construing the agreement as violative of the statutes and thus illegal and void. However, the law is well established that when the terms of an agreement have two possible interpretations, by one of which the agreement would create a valid contract and by the other would be illegal or void, the former will be adopted.[3] The verbal understanding between Bardsley and Young reasonably may be interpreted from the record before us as a lawful agreement between broker and salesman whereby the latter was to handle the business, keep the broker's contacts alive, and in the event of a law suit

---

[3]*Schofield* v. *Zion's Co-op. M. I.*, 1934, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083; Corbin on Contracts, Vol. 3, Sec. 546, p. 93; 20 Am.Jur., Evidence, §§ 226, 229.

to make the broker whole, and was not, as the majority suggests, an unlawful attempt to circumvent the statute. The findings of the lower court support this construction.[4] Furthermore, there is no evidence in the record that the plaintiff ever told anyone that he was *not* working under a broker, and nothing in our statute, the regulations of the Securities Commission, or in the law of agency requires that the principal be disclosed to the third party nor that the name of the principal appear on the contracts entered.[5]

Young was instrumental in the final sale of Buchanan's property. He *earned* the commission agreed upon. The record discloses that Young was "engaged by" the broker "to deal in any act or transaction  *  *  *  for compensation or otherwise" within the language of Section 61-2-3, U.C.A.1953. Thus Young, as salesman for Bardsley, had a good cause of action against the broker for the commission. But may the salesman collect this earned compensation from the seller when his broker is unwilling to join? The method of the salesman here in joining the broker as an unwilling party plaintiff in an action against the seller, merely avoided a circuity of action, and was not violative of Rule 19(a) since the broker did in law have an interest in securing payment of the amount owed.[6]

This appears to me a strong case justifying our sustaining the judgment of the lower court.[7]

---

[4]On appeal, prevailing party is entitled to have us consider "all evidence, and every inference and intendment fairly arising therefrom, in light most favorable to him." See *Toomer's Estate* v. *Union Pac. R. Co.*, 121 Utah 37, 239 P. 2d 163.

[5]See, 2 Am.Jur. § 394, p. 309 and cases cited thereat.

[6]2 Am.Jur. § 410, p. 320.

[7]See, footnote 4, supra.